Rockingham
No. 82-151

## THE STATE OF NEW HAMPSHIRE

v.

## FREDDY E. COMTOIS

December 30, 1982

*Gregory H. Smith*, attorney general (*Brian T. Tucker*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. The issues presented in this first-degree murder case are whether the trial court committed reversible error by allowing the State to reopen its case without a showing of good cause, and whether the trial of the defendant in his absence after he escaped from custody violated his right to confront the evidence against him. We affirm the defendant's conviction.

The defendant, Freddy E. Comtois, was indicted for first-degree murder, RSA 630:1-a, for shooting Steven Mitchell five times with a handgun. After he was apprehended in Florida and returned to New Hampshire, proceedings began in Superior Court (*Pappagianis*, J.) on January 18, 1982. The trial judge met with counsel for both sides in chambers and disposed of several preliminary motions. The State nol-prossed an indictment against the defendant for felonious use of a firearm.

The trial judge then presided in the courtroom over the examination of a witness pursuant to a motion to compel certain answers on deposition. Thereafter, with the defendant present, the court gave preliminary instructions to forty-three veniremen about the trial of the defendant for murder, including the name of the case, the identity of the lawyers, the indictment, the burden of proof, and the list of possible witnesses for both sides. The trial judge then conducted a preliminary voir dire by asking the statutory questions, *see* RSA 500-A:22 (Supp. 1979), and excused nine prospective jurors for cause. The remaining prospective jurors were requested to return the next day for individual voir dire. That night, however, the defendant escaped from jail, and he was not apprehended until after the trial was completed.

Upon learning of the defendant's escape, the court instructed the prospective jurors not to report until January 20. On that day, a hearing was held on the question whether the defendant had waived his right to be present at his trial, and whether the trial should proceed in his absence. The court took notice that the defendant was

present on January 18 and that he was being held in lieu of bail. After hearing witnesses and arguments, the court, over objection and exception, found that the trial had begun on January 18, 1982, that the defendant was present during the proceedings that day, and that he had voluntarily absented himself from the trial, thereby waiving his right to be present during the remainder of the trial.

The trial proceeded, and at the end of the prosecution's case the defendant moved to dismiss on the ground that the State had failed to identify the defendant as the person referred to by the witnesses. The court, over objection and exception, allowed the State to reopen its case, and two witnesses identified the defendant by a photograph. The defendant was convicted of first-degree murder and sentenced to life in prison without parole. *See* RSA 630:1-a, III.

■ ■ The defendant argues on appeal, as he did at trial, that the prosecution failed to offer any evidence of "good cause" to reopen its case as required by Superior Court Rules 70 and 115. In dealing with this argument, we point out that, although the discovery of truth in the context of a criminal trial is quite properly limited by certain constitutional safeguards and privileges, it should not suffer by an overly technical application of rules of court. Rules 70 and 115 are designed to govern the orderly presentation of evidence, but they are not intended to be a roadblock to justice for either side. "Good cause" exists when it is "fair and just" to allow a party to reopen. *See Jaques v. Chandler*, 73 N.H. 376, 381, 62 A. 713, 714 (1905).

■ In the case before us, there was no need for the State to introduce evidence on the issue of good cause. In view of the testimony of various witnesses, it was reasonable for the prosecution to believe it had supporting evidence that the person to whom the witnesses referred as Freddy Comtois was the same person apprehended in Florida with Raymond Glidden, whom witnesses had described as an associate of the defendant, and was the same Freddy Comtois who appeared as the defendant at the opening of the trial. Rather than take the risk that this court might find the identification evidence insufficient, however, the trial judge properly allowed the State to reopen its case. That it was "fair and just" to do so was evident from the circumstances, and no specific evidence on that issue was required. It was a decision within the sound discretion of the trial court, which we uphold because it was not clearly untenable or unreasonable. *State v. Comparone*, 110 N.H. 398, 399, 269 A.2d 131, 132 (1970); *see State v. Booton*, 114 N.H. 750, 761, 329 A.2d 376, 384 (1974), *cert. denied*, 421 U.S. 919 (1975); *see also State v. Randall*, 122 N.H. 19, 19–20, 440 A.2d 11, 11 (1982).

The defendant also argues that it was a violation of his rights

under both the sixth amendment to the United States Constitution and part one, article fifteen of the New Hampshire Constitution for the court to conduct his trial in his absence. Contrary to his contention, however, we uphold the findings of the trial court that the trial had commenced and that the defendant voluntarily absented himself from the proceedings, thus waiving his right to be present at his trial.

In *State v. Lister*, 119 N.H. 713, 406 A.2d 967 (1979), this court for the first time considered the question whether a defendant could be tried in his absence without violating his constitutional rights. In that case, the defendant, who was in custody, escaped after five jurors had been selected but not sworn. This court, expressly reserving the question whether commencement of the trial is essential to a waiver of the right to be present, held that the trial had commenced. *Id.* at 717, 406 A.2d at 969. We also held that jeopardy need not have attached in order for a waiver to be effective, and that the trial begins, for the purpose of waiver of the right to be present, once the process of empaneling jurors has begun. *Id.* at 716, 406 A.2d at 969; *see Hopt v. Utah*, 110 U.S. 574, 578 (1884); *People v. Pace*, 34 Ill. App. 3d 440, 444–45, 339 N.E.2d 785, 789 (1975).

Here again, we need not decide whether the commencement of the trial is essential to a waiver because the trial in this case had begun. The trial court had given specific information to forty-three veniremen about this particular case for which they had been called to duty. They were not general instructions unrelated to a particular case but were aimed directly at this case. The case was described by name, the contents of the indictment were stated, the lawyers were identified, and the names of all possible witnesses for both sides were read, together with their places of residence. The court conducted a voir dire of all the veniremen by asking the statutory questions contained in RSA 500-A:22 (Supp. 1979). As a result of these questions, nine veniremen were excused for cause. Because it was about five o'clock in the afternoon, the remaining veniremen were excused to return the next day for individual voir dire.

During all these proceedings, as well as during the deposition examination of a witness in the case, the defendant was present. For the purposes of this case, the trial had clearly begun. The defendant could properly be found to have known that his trial had begun and to have voluntarily waived his right to be present, despite his statement at sentencing that he did not know "that a trial was actually in effect . . . ."

The defendant also argues that, because his mandatory sentence

was life imprisonment without parole, RSA 630:1-a, III, no waiver should be permitted. He equates his sentence with that of death and relies upon Rule 43 of the Federal Rules of Criminal Procedure as it read at the time it was upheld in *Taylor v. United States*, 414 U.S. 17, 18 (1973). That rule prohibited convictions in capital cases when the defendant voluntarily absented himself. The defendant claims the same rule should apply when the penalty is life imprisonment without parole.

This court, however, has already upheld a waiver in a life-without-parole case. *State v. Lister*, 119 N.H. 713, 406 A.2d 967 (1979). Moreover, it has not been expressly decided that a waiver is not permissible in a capital case, and the exception contained in the federal criminal rule at the time *Taylor* was decided was deleted in 1975. 8B J. MOORE, MOORE'S FEDERAL PRACTICE para. 43.01, at 43-2 (2d ed. 1982). Furthermore, there is a vast difference between the death penalty and life imprisonment without parole. *See Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (opinion of Stewart, Powell, and Stevens, JJ.).

We hold that none of the defendant's rights under either the Constitution of the United States or that of this State has been violated.

*Affirmed.*